UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| KENNETH H., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:20-cv-00275-RLY-MPB |
| | ) |
| KILOLO KIJAKAZI, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION ON
APPROPRIATE DISPOSITION OF THE ACTION**

Plaintiff Kenneth H. requests judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner" of his application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d), 1383(c)(3). On October 12, 2021, United States District Judge Richard L. Young entered an Order referring this matter to the Undersigned for a report and recommendation regarding the appropriate disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket No. 19). For the reasons set forth below, it is recommended that the Commissioner's decision denying the Plaintiff benefits be **REVERSED** and **REMANDED** for further proceedings.

**I.     PROCEDURAL BACKGROUND**

On August 7, 2018, Kenneth H. filed his application for Title II DIB benefits. (Docket No. 12-5 at ECF pp. 2-9). Kenneth H. alleged disability resulting from his bipolar and sciatica. (Docket No. 12-6 at ECF p. 5). The Social Security Administration ("SSA") denied Kenneth H.'s claim initially on December 6, 2018, and upon reconsideration on February 20, 2019. (Docket No. 12-2 at ECF pp. 15-36). On February 28, 2019, Kenneth H. filed a written request for a hearing, which was granted. (Docket No. 12-4 at ECF p. 18).

On January 8, 2020, Administrative Law Judge ("ALJ") Matthias D. Onderak conducted a hearing, where Kenneth H. appeared in person and represented by counsel. (Docket No. 12-2 at ECF p. 40). Vocational Expert Liala Slaise appeared by telephone. (*Id.*). On February 5, 2020, ALJ Onderak found that Kenneth H. was not disabled. (Docket No. 12-2 at ECF pp. 18-32). Kenneth H. appealed the ALJ's decision, and on October 6, 2020, the Appeals Council denied Kenneth H.'s request for review, making the ALJ's decision final. (Docket No. 12-2 at ECF pp. 2-9). On December 8, 2020, Kenneth H. filed this action, which seeks judicial review of the ALJ's decision denying benefits pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.    STANDARD FOR PROVING DISABILITY

Under the Social Security Act, a claimant may be entitled to benefits only after he establishes that he is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors. 20 C.F.R. § 404.1520(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that also meets the durational requirement, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20

C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. § Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments in the Listing of Impairments, then his residual functional capacity will be assessed and used for the fourth and fifth steps. *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v). Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); Social Security Ruling ("SSR") 96-8p). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1620(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work, given his RFC and considering his age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if he can perform any other work in the relevant economy. *Id.*

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

### III. STANDARD OF REVIEW OF THE ALJ'S DECISION

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for

the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). The standard demands more than a scintilla of evidentiary support, but it does not demand a preponderance of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he has made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012).

## IV. BACKGROUND

### A. Factual Background

Kenneth H. was forty-seven years old as of his September 3, 2017, alleged onset date. (Docket No. 12-5 at ECF p. 2). He has at least a high school education. (Docket No. 12-2 at ECF p. 30). He reported his past relevant work as a plaster molder and an art director. (*Id.*).

### B. ALJ Decision

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a) and ultimately concluded that Kenneth H. was not disabled. (Docket No. 12-2 at ECF p. 32). At Step One, the ALJ found that Kenneth H. had not engaged in substantial gainful activity since September 3, 2017, the alleged onset date. (*Id.* at ECF p. 20). In Step One, the ALJ further explained that Kenneth H. had worked after the alleged disability onset date, earning $4,652.00, in the first quarter of 2018. (*Id.*). The ALJ reasoned, "the issue of whether or not this

was an unsuccessful work attempt is not dispositive of the outcome" because "there was still more than 12 consecutive months with no substantial gainful activity." (*Id.*). At Step One, the ALJ further indicated:

> [S]ome of the claimant's medical evidence indicates that the claimant is still working (see Ex. 7F/14, 23), and this work could amount to disqualifying substantial activity. Because the undersigned has ultimately decided that the medical evidence does not support a finding of disability during any part of the relevant period for adjudication, the undersigned finds that the claimant's substantial gainful activity issue is not dispositive of disability and proceeds forward with the sequential evaluation.

(*Id.*).

At Step Two, the ALJ found that Kenneth H. suffered from the following severe impairments: degenerative disc disease and obesity. (*Id.* at ECF p. 21). At Step Three, the ALJ found that Kenneth H.'s impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. (*Id.* at ECF pp. 21-23). The ALJ determined that Kenneth H.'s physical impairments did not meet or medically equal the severity of Listing 1.04 for disorders of the spine. (*Id.*). The ALJ further determined that Kenneth H.'s mental impairments, considered singly and in combination, did not meet or medically equal the severity criteria of Listing 12.04. (*Id.*). As for the "paragraph B" criteria, the ALJ found that Kenneth H. had mild limitations in understanding, remembering, or applying information; interacting with others; and concentrating, persisting or maintaining pace; and no limitation in adapting or managing oneself. (Docket No. 12-2 at ECF pp. 22-23).

After Step Three but before Step Four, the ALJ found that Kenneth H. had the residual functional capacity ("RFC") to perform medium work, except that he: "can frequently climb ladder, ropes, scaffolds, ramps, and stairs and can frequently stoop, kneel, crouch, and crawl." (Docket No. 12-2 at ECF pp. 23-24).

5

At Step Four, the ALJ concluded that Kenneth H. was capable of performing his past relevant work as a plaster molder. (Docket No. 12-2 at ECF p. 30). The ALJ made an alternative Step Five finding, relying on the vocational expert's testimony, and determining that, considering Kenneth H.'s age, education, work experience, and residual functional capacity, he was capable of adjusting to other work. (*Id.* at ECF p. 30-31). The ALJ concluded that Kenneth H. was not disabled. (*Id.* at ECF p. 31).

## V.  DISCUSSION

Kenneth H. contends that, essentially, the ALJ's decision is riddled with error. These errors synthesize to two critical defects that infect the entire decision. First, he argues that the decision is based on cherry-picked evidence, highlighting normal findings or evidence of normal functioning, and overlooking objective abnormalities or difficulties in function. Second, he argues, the ALJ failed to provide an accurate and logical bridge from the evidence to his conclusion. The more specific errors that led to these critical defects are: (1) impermissibly substituting his lay opinion for those of the medical sources; (2) erring at Step Three because his condition meets Listing 12.04; (3) assigning an RFC that did not accommodate for his limitations; and (4) ultimately providing a decision that was not supported because of the incomplete picture the ALJ provided to the vocational expert ("VE"). The Court does not reach all of these issues because it finds that issues involving the ALJ's RFC determination are well-taken and, on their own, require reversal and remand.

A claimant's RFC is his maximum ability to perform work activities on a sustained basis despite the limitations from his impairments. 20 C.F.R.§ 404.1545(a)(1). To determine a claimant's RFC, an ALJ must consider all of the claimant's symptoms, their consistency with the

objective medical evidence and other evidence in the record, and their intensity, persistence, and limiting effects. *Id.*

1. **The ALJ's Subjective Symptom Analysis is Not Supported by Substantial Evidence**

Kenneth H. argues that the ALJ erred in evaluating his subjective symptoms. In assessing a claimant's subjective symptoms, the ALJ must first decide, based on objective medical evidence, whether the claimant has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. § 404.1529(b). Then the ALJ must evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which he is limited in performing work-related activities. 20 C.F.R. § 404.1529(c). Under this latter step, the ALJ must consider objective medical evidence and "other evidence," which includes statements made by the individual, 20 C.F.R. § 404.1529(c)(2), as well as the following: daily activities; location, duration, and frequency of symptoms; precipitating and aggravating factors; medications; other treatments; other measures taken for relief; and other factors concerning functional limitations. 20 C.F.R. § 404.1529(c)(3). In determining the extent to which the claimant's symptoms affect his capacity to perform basic work activities, the ALJ must consider whether the subjective symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). The ALJ concludes by factoring this symptom analysis into the RFC determination. *See* 20 C.F.R. § 404.1545(a)(3).

In addition to the text of the relevant regulations, the Seventh Circuit has spoken directly on symptom evaluations conducted by ALJs. In *Cole v. Colvin*, the Seventh Circuit observed that SSR 16-3p, the SSA's revised interpretive guidelines,

> [M]eant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of

7

> pain assertions by claimants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence.

831 F.3d 411, 412 (7th Cir. 2016). The Seventh Circuit was careful, however, to clarify that a claimant's statements about the intensity, persistence, and limiting effects of his symptoms "may not be disregarded solely because they are no substantiated by objective medical evidence." *Id.* at 416 (citation omitted). Consequently, an ALJ, while he cannot judge a claimant's character, may assess the veracity of a claimant's subjective assertions of pain.

Moreover, in reviewing subjective accounts of a claimant's symptoms, a reviewing court will not overturn an ALJ's decision to discredit such testimony unless the decision is "patently wrong." *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). A decision is patently wrong when it lacks explanation and relies on inferences that are not based on specific factual findings that are supported by the evidence. *Id.*

Here, the ALJ found that Kenneth H. has multiple medically determinable impairments, but that his account of his subjective symptoms was not "entirely consistent" with the evidence in the record. (Docket No. 12-2 at ECF p. 25). The ALJ recognized that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider 'other evidence' in the record to determine if the claimant's symptoms limit the ability to do work-related activities." (*Id.* at ECF p. 24).

First, the ALJ referred to Kenneth H.'s ability to "work," at least six times throughout the decision. (Docket No. 12-2 at ECF pp. 20, 22, 23, 26). However, a review of the evidence shows a lack of a logical bridge supporting the ALJ's reliance on Kenneth H,'s purported ability to work after his alleged onset date. At Step One, the ALJ concluded that although Kenneth H. worked

after his alleged onset date at levels that may be considered SGA, it was not dispositive because there were more than 12 consecutive months with no SGA and the ALJ ultimately concluded that Kenneth H. was not disabled "during any part of the relevant period." (Docket No. 12-2 at ECF p. 20). Yet, it is apparent that the ALJ's conclusions about Kenneth H.'s "work" after the alleged onset date influenced his conclusions throughout the remainder of the Decision and tainted his view of the evidence and Kenneth H.'s credibility.

      For example, the ALJ stated at Step One that "some of the claimant's medical evidence indicates that [he] is still working . . ., and this work could amount to disqualifying substantial activity." (Docket No. 12-2 at ECF p. 20). The evidence cited by the ALJ is two treatment notes from Southern Hills Counseling Center in October and December 2018, noting that Kenneth H. had suffered a "recent back issue last Thursday that has led him to miss several days of work" (Docket No. 12-7 at ECF p. 225) and was "busy with work, family, and his girlfriend over the past few weeks" (Docket No. 12-7 at ECF p. 234). Yet, Kenneth H. explained in his testimony, which the ALJ did not address, that these references to "work" referred to the yardwork and cleaning he was doing at his mother's house, not paid employment. (Docket No. 12-2 at ECF p. 53 ("If I'd done any work . . . it would have been yard work around the house"). This is corroborated by the Detailed Earnings Query, which shows income in 2018 only from "AEG Processing Center" (Docket No. 12-5 at ECF p. 26), which Kenneth H. testified was the same company he had worked for until September 2017, when he had to stop working due to his conditions (Docket No. 12-2 at ECF pp. 56-59; Docket No. 12-6 at ECF p. 21 (Work Activity Report showing that Kenneth H. worked until September 3, 2017, stopped working due to his conditions, attempted to return to work in February 2018, but stopped working on March 3, 2018, due to his health problems.)). Kenneth H.'s testimony is further corroborated by a

December 2019, Report of SGA Determination, noting that although Kenneth H. had attempted to return to his old job in February 2018, his employment ended on March 4, 2018, due to his "disabling conditions." (Docket No. 12-6 at ECF pp. 27-29). Contrary to the ALJ's conclusion (Docket No. 12-2 at ECF p. 20), there is no evidence of any paid employment after this attempt (Docket No. 12-5 at ECF pp. 23-28).

      The ALJ did not address the Report of SGA Determination concluding that Kenneth H.'s work in 2018, for less than a month, constituted an "unsuccessful work attempt." (Docket No. 12-6 at ECF pp. 27-29). While the ALJ said the issue was non-dispositive (Docket No. 12-2 at ECF p. 20), in addressing the "Paragraph B" criteria at Step Three, the ALJ made references in three of the four areas of functioning to Kenneth H.'s "new job" that he obtained in the first quarter of 2018 where he "work[ed] at levels exceeding substantial gainful activity for a period of time." (Docket No. 12-2 at ECF pp. 22-23 (finding that Kenneth H,'s "new job" showed that he could "understand and learn terms, instructions and procedures," "follow one or two-step instructions to carry-out tasks," "sequence multi-step instructions," "cooperate with others," "initiate or sustain conversation," "ask for help when needed," "initiate and perform tasks that he knew how to do," "complete tasks in a timely manner," and "ignore or avoid distractions while working")). Yet, the ALJ did not explain how work—regardless of whether it reached SGA levels—done for less than a month, which the Agency itself indicated was an unsuccessful work attempt (Docket No. 12-6 at ECF pp. 27-29), and which Kenneth H. testified he was forced to quit due to his mental heal issues (when he ultimately had a second suicide attempt two months later (Docket No. 12-2 at ECF p. 51)), justifies the ALJ's conclusions that Kenneth H. has no or mild limitations in the "B Criteria." *Golembiewski v. Barnhart*, 322 F.3d 912, 916-17 (7th Cir. 2003) ("An ALJ may not mischaracterize evidence of a disability that contradicts the ALJ's

ruling."). Moreover, the ALJ did not explain how "obtain[ing] a new job and work[ing] at levels exceeding [SGA] for a period of time" demonstrates that Kenneth H. is capable of any of the skills surmised by the ALJ (e.g., following one- or two-step instructions, sequencing multi-step instructions, cooperating with others, completing tasks in a timely manner, etc.) given that there is no evidence he successfully performed such skills at a job he held less than a month that he had to quit due to mental health issues. *O'Connor-Spinner v. Barnhart*, 627 F.3d 614, 621 (7th Cir. 2010) ("An ALJ must explain why he does not credit evidence that would support strongly a claim of disability, or why he concludes that such evidence is outweighed by other evidence.").

Additionally, in the RFC analysis, the ALJ cited the evidence that Kenneth H. "worked" in December 2018, to suggest that Kenneth H.'s statements are not consistent with the medical evidence. (Docket No. 12-2 at ECF pp. 25-26). However, the ALJ did not address Kenneth H.'s hearing testimony where the ALJ asked Kenneth H. about these statements, to which Kenneth H. replied that the reference would have been "yard work" or work around the house. (*Id.* at ECF p. 53 (Claimant: "If I'd done any work . . . it would have been yard work around the house." ALJ: "That makes sense. That's why I'm asking you."). This is a mischaracterization of the evidence that cannot support the ALJ's rejection of Kenneth H.'s statements. *Pierce v. Colvin*, 739 F.3d 1046, 1050-51 (7th Cir. 2014) (ALJ erred in overlooking an unsuccessful work attempt before finding claimant not credible where her "dogged efforts to work beyond her physical capacity would seem to be highly relevant in deciding her credibility and determining whether she is trying to obtain government benefits by exaggerating her pain symptoms"). Although an ALJ is not required to address "every piece of evidence," he must still "consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th

Cir. 2010). By overlooking key facts and overstating Kenneth H.'s work history, the ALJ engaged in the kind of cherry-picking that is impermissible.

The Commissioner recognizes that Kenneth H.'s "2018 work activity held little probative value because he stopped working after about one month due to his symptoms." (Docket No. 16 at ECF p. 19). However, the Commissioner argues "'[n]ot all of the ALJ reasons must be valid as long as *enough* of them are.'" (*Id.* citing Halsell v. Astrue, 357 Fed. App'x 717, 722-23 (7th Cir. 2009) (emphasis in original)). The Commissioner is correct, but the Court finds that not enough of them are valid here.

For instance, in adopting the opinions of the State agency medical consultants, regarding Kenneth H.'s physical impairments, the ALJ relied on "lack of consistent, ongoing treatment" and a "lack of an updated MRI." (Docket No. 12-2 at ECF p. 28). However, the ALJ did not consider the reason that Kenneth H. may not have obtained it (e.g., due to his mental health, treatment compliance, and insurance issues). (Docket No. 12-7 at ECF pp. 186-197, 311 (stopped taking his medications, in part, due to insurance issues; Plaintiff is on HIP insurance (i.e., Medicaid)). *See* Shauger v. Astrue, 675 F.3d 690, 696 (7th Cir. 2012) ("[A]n ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference.").

The Seventh Circuit has criticized ALJs for overemphasizing daily living activities or equating those activities with an ability to work full time. *See* Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012). But, the ALJ should consider a claimant's daily activities when assessing whether the claimant's testimony regarding the severity of his impairments is credible. *See* 20 C.F.R. § 404.1529(c)(3)(i) (indicating that the agency will consider daily living activities when assessing the severity of a claimant's symptoms). Here, the ALJ considered Kenneth H.'s daily

12

activities, among many factors, when assessing his credibility and when determining his RFC. For example, the ALJ noted that Kenneth H. sometimes needed help with things such as getting his prescriptions renewed and reminders to complete personal care, but he also noted a long list of activities Kenneth H. acknowledged he could complete. (Docket No. 12-2 at ECF pp. 22-23). Such activities included daily socializing with his girlfriend, socializing with other family and friends, helping his mother clear her hoarded home, volunteering once a week, playing board games, preparing meals, completing household chores, driving, shopping, handling money, traveling, and hiking. (Docket No. 12-2 at ECF pp. 22-26, 29-54, 64-65, 68-69, 76).

However, the ALJ also improperly equated his daily living activities with an ability to work full time. He rejected Ms. Kramer's, a LCSW, opinion that Kenneth H. would be seriously limited or unable to meet competitive standards in several areas, which would ultimately lead him to missing work more than four days per month and that he would be off task 20 percent of a typical workday because of Kenneth H.'s activities of daily living, "to include dates, vacations, eating out, helping his mother, doing yardwork, volunteering with children, and completing IRS paperwork." (Docket No. 12-2 at ECF p. 29). The ALJ also rejected Ms. Kramer's marked restrictions of activities of daily living, marked difficulties in maintaining social, and marked difficulties in maintaining concentration, persistence or pace. (*Id.* at ECF p. 29). The Seventh Circuit has held that the "sporadic performance [of household tasks or work] does not establish that a person is capable of engaging in substantial gainful activity." *Scrogham v. Colvin*, 765 F.3d 685, 700 (7th Cir. 2014) (citation omitted). Kenneth H. reported that his "vacations" were short trips to the mountains where he did not shop, dine out, or do anything but hike; that he usually declined to go out with his girlfriend but "occasionally" did so; that he only volunteers four hours a week with children; that he had assistance with the IRS paperwork; that his family

helps to manage his finances; and that he requires assistance completing chores when his back flares up. (Docket No. 12-2 at ECF pp. 50-51, 69; Docket No. 12-7 at ECF pp. 293, 346).

For all of these reasons, the ALJ's subjective symptom analysis is not based on substantial evidence, justifying remand for consideration of the entirety of the record.

### 2. The RFC Discussion Overlooks Contradictory Objective Evidence

The RFC is a determination of the most a claimant can do. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). An ALJ may not selectively consider medical reports, but must consider "all relevant evidence." *See Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000); 20 C.F.R. § 404.1545(a)(1) (we will assess your residual functional capacity based on all the relevant evidence in your case record).

While the ALJ acknowledged that Kenneth H.'s "concentration was described as poor when he was hospitalized in 2017," for his first suicide attempt, the ALJ concluded "since then, it has generally been described as fair or normal." (Docket No. 12-2 at ECF p. 23). Given this evidence, and the work analysis described above, the ALJ found that Kenneth H. had mild limitations in his concentration, persistence, or pace, during the Paragraph B analysis at Step 3 and ultimately assessed an RFC and a hypothetical to the vocational expert that did not include any mental health limitations.

The ALJ continued with his analysis, including his RFC analysis. While the RFC analysis contained a fairly robust discussion of Kenneth H.'s physical health records, his discussion of Kenneth H.'s mental health records was sparse. The Commissioner agrees. (Docket No. 16 at ECF p. 7) ("While the ALJ did not summarize Plaintiff's treatment history in great detail, he did explain the basis for his conclusions and his discussion revealed that he considered the relevant evidence.")). Of course, an ALJ need only "minimally articulate [his] reasoning" in order to

14

satisfy the duty of building a logical bridge between the evidence and his conclusions. *Winkelman v. Saul*, 835 Fed. App'x 889, 891 (7th Cir. 2021) (quoting *Filus v. Astrue*, 694 F.3d 863, 869 (7th Cir. 2012)).

The ALJ made repeated references to Kenneth H.'s "improvement," referencing his improvement after his two suicide attempts in September/October 2017 and May 2018. But, since May 2018, Kenneth H. has continued to report suicidal thoughts, depression, mood swings, and fatigue despite improvement with medication. (Docket No. 12-7 at ECF pp. 312-315, 342-345; Docket No. 12-8 at ECF p. 9-49). In August 2018, Kenneth H. continued to struggle with suicidal ideation. (Docket No. 12-7 at ECF pp. 198-202). In September 2018, Kenneth H. reported mood instability, living with his aunt, inability to care for himself, and chronic suicidal ideation. (Docket No. 12-7 at ECF pp. 182-185). Dr. Hyland increased Kenneth H.'s Lamictal. (*Id.*). In October 2018, Ms. Kramer noted that stress was a trigger for Kenneth H.'s suicidal ideations of late, largely due to financial issues. (Docket No. 12-7 at ECF pp. 228-229). In November 2018, Kenneth H. had ongoing periodic suicidal thoughts, impulsivity, was judgmental towards others, and had memory issues. (Docket No. 12-7 at ECF pp. 230-233).

In early December 2018, Kenneth H. returned to Ms. Kramer; he noted that the need to impress other people, a stressful work schedule, increased travel time, and being judgmental and uncompromising towards others typically contributed to his depression and previous suicide attempts. (Docket No. 12-7 at ECF pp. 234-235). Meditation and improving his communication skills had decreased these stressors; his progress was noted as "good." (*Id.*). In mid-December, Kenneth H.'s depression had increased due to illness, not wanting to disappoint others, and conflicts with his girlfriend due to his mental illness. (Docket No. 12-7 at ECF pp. 236-239). In January 2019, Kenneth H. had increased depression, suicidal thoughts, feelings of worthlessness,

15

negative self-talk, and anxiety due to memory loss; Ms. Kramer noted that his insight was "fair" at times. (Docket No. 12-7 at ECF pp. 240-247).

In January 2019, Kenneth H. saw Dr. Winters, for low back pain, but it was also noted that Kenneth H. has suicidal thoughts, depression, mood swings, and fatigue. (Docket No. 12-8 at ECF pp. 9-49). Kenneth H. had a PHQ-9 score[1] was 18 (moderately severe depression). (*Id.*).

In early March 2019, Kenneth H. had increased stress, anxiety, and suicidal thoughts. (Docket No. 12-7 at ECF pp. 336-337). A March 13, 2019, telemedicine report from Elizabeth Grant, M.S./M.S.N/A.R.N., Southern Hills Counseling Center, noted that Kenneth H. was feeling better than he had in years, but he continued to have anxiety and depression. (Docket No. 12-7 at ECF pp. 312-315). After a medication change, Kenneth H.'s suicidal thoughts had decreased by 25 percent in late March. (Docket No. 12-7 at ECF pp. 338-339). In May 2019, Kenneth H. had memory issues and stress issues due to issues with others and increased responsibilities. (Docket No. 12-7 at ECF pp. 342-345). The next month, Kenneth H. noted that his brother had been helping him with his finances and he had periodic suicidal thoughts despite medication; his insight was "fair" at times. (Docket No. 12-7 at ECF pp. 346-349).

In July 2019, Kenneth H. had increased depression and suicidal thoughts due to financial difficulties and feeling taken advantage of by a friend; he told Ms. Grant that he still had suicidal ideation despite some improvement with medication and thought it was "as good as it [was] going to get." (Docket No. 12-7 at ECF pp. 320, 323, 350-353). The next month, Kenneth H. continued to have suicidal thoughts and his insight was noted as "fair"; a Comprehensive

---

[1] The PHQ is a multipurpose instrument for screening, diagnosing, and monitoring depression. Kurt Kroenke et al., *The PHQ-9: Validity of a Brief Depression Severity Measure*, 16 J. Gen. Internal Med. 606-16 (2001), https://onlinelibrary.wiley.com/doi/full/10.1046/j.1525-1497.2001.016009606.x.

Treatment Plan noted continued difficulty coping with stressors, impulsivity, and inability to manage his finances. (Docket No. 12-7 at ECF pp. 354-355). In October and November 2019 there was ongoing suicidal thoughts. (Docket No. 12-7 at ECF pp. 356-358, 359).

On November 13, 2019, Ms. Kramer completed a Mental Medical Assessment Form. (Docket No. 12-7 at ECF pp. 302-307). Of relevance, Ms. Kramer opined that Kenneth H. was seriously limited in remembering work-like procedures, completing a normal workday and workweek without interruptions from psychologically based symptoms, responding appropriately to changes in a routine work setting, dealing with normal work stress, understanding, remembering and carrying out detailed instructions, setting realistic goals or making plans independently of others, and dealing with the stress of semiskilled and skilled work. (Docket No. 12-7 at ECF p. 303-305). Ms. Kramer opined that these limitations stemmed from Kenneth H.'s mood disorder, memory issues, and physical limitations. (*Id.*). She noted that during a "flare-up" of his mood disorder or physical pain, Kenneth H. experienced increased suicidal ideation and tended to isolate himself, which would make him unable to work; his psychiatric condition exacerbated his physical symptoms. (Docket No. 12-7 at ECF p. 305). The ALJ found Ms. Kramer's opinion unpersuasive because of Kenneth H.'s activities of daily living and because the "medical evidence indicates that the claimant has improved since May of 2018, with Ms. Kramer's notes and the claimant admitting that his medication helped improve his symptoms." (Docket No. 12-2 at ECF p. 29).

Kenneth H.'s symptoms were improved compared to the height of his 2017/2018 suicidal attempts. But the objective medical evidence does not show that Kenneth H.'s mental health symptoms were resolved. And the ALJ's "brief" (Docket No. 16 at ECF p. 8) analysis of the mental health record, focuses on the more positive findings and does not address the flare-ups

17

subsequent to May 2018, which show that, as is typical, Kenneth H.'s mental health problems wax and wane. As the Commissioner recognizes, Kenneth H. did frequently complain of fleeting suicidal ideation after May 2018, which was triggered by a variety of things, including back pain and financial stressors. (Docket No. 12-7 at ECF pp. 221, 229, 350, 358-59). However, the Commissioner argues that this evidence is non-dispositive because Kenneth H. had been experiencing suicidal ideation every day of his life since he was a teenager. (Docket No. 12-7 at ECF p. 31, 124). The Commissioner argues that despite Kenneth H.'s lifelong suicidal ideation, he was able to work successfully for many years and has not established long-term worsening of his conditions. Rather, the Commissioner argues, Kenneth H. reported the treatment that he received after his two hospitalizations in September 2017 and May 2018 for two separate suicidal attempts, made him feel better than he had "in years." (Docket No. 12-7 at ECF p. 312). On review, the issue with the Commissioner's argument is that it is not the rationale of the ALJ. Indeed, in this section of the Commissioner's brief the Commissioner cites medical records and not the ALJ's decision itself. (Docket No. 16 at ECF pp. 9-10). "Under the Chenery doctrine, the Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace." *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)). While the ALJ need not address every piece of evidence, his "brief" discussion of Kenneth H.'s mental health objective evidence does not minimally articulate his rationale that Kenneth H., did not require any mental health limitations in his RFC.

## VI. CONCLUSION

For all these reasons, the Magistrate Judge recommends that the Court **REMANDS** the ALJ's opinion pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration, consistent with this opinion. Any objections to the Magistrate Judge's Report and

18

Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

**SO RECOMMENDED** the 7th day of June, 2022.

_____
Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.